```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

------------------------------x
                              :
WAYNE WORLD                   :    Civ. No. 3:16CV00519(JCH)
                              :
v.                            :
                              :
SEMPLE, et al.                :    October 12, 2018
                              :
------------------------------x
```

### RECOMMENDED RULING RE: "PLAINTIFF WAYNE WORLD'S MOTION TO REOPEN CASE PURSUANT TO FED. R. CIV. PRO. 60(b) AND MOTION FOR SANCTIONS" (Doc. #154)

Counsel for plaintiff Wayne World ("plaintiff") have filed a "Motion to Reopen Case Pursuant to Fed. R. Civ. Pro. 60(b) and Motion for Sanctions." [Doc. #154] (sic). Judge Janet C. Hall referred that motion to the undersigned on September 17, 2018. [Doc. #155]. On October 5, 2018, defendants filed an objection to counsel's motion. [Doc. #158].[1] For the reasons articulated below, the Court recommends that counsel's "Motion to Reopen Case Pursuant to Fed. R. Civ. Pro. 60(b) and Motion for Sanctions" [**Doc. #154**] (sic) be **DENIED**.

---

[1] The Court categorizes the instant motion as having been made by plaintiff's counsel, as the relief sought therein is largely for counsel's benefit. Indeed, counsel represent: "On September 7, 2018, Attorney Ward distributed this proceeds of the Settlement Agreement per Plaintiff World's instructions and his contractual obligations such as costs and attorneys' fees." Doc. #154 at 3.

1

1.  **Background**

On August 21, 2018, counsel for plaintiff and counsel for defendants each filed a stipulation of dismissal of this case, with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). See Docs. #150, #151. Those stipulations were filed after the parties had reached a settlement of this matter. On August 22, 2018, Judge Hall entered an Order "granting" the stipulations of dismissal. See Doc. #153. The case was terminated on that same date.

On September 14, 2018, counsel for plaintiff filed the instant "Motion to Reopen Case Pursuant to Fed. R. Civ. Pro. 60(b) and Motion for Sanctions." [Doc. #154] (sic). The motion alleges, inter alia, that the "State of Connecticut" reversed a wire of the settlement funds ($1.3 million), which had been wired into Attorney DeVaughn Ward's "business checking account ... based on his pre-existing status as a contractor in the State's payment system." Id. at 2. Attorney Ward transferred those proceeds per plaintiff's instructions and Attorney Ward's "contractual obligations such as costs and attorneys' fees." Id. at 3. Following the transfer of those proceeds, on September 7, 2018, counsel for plaintiff received notice that each had been served with papers in a state court wrongful death proceeding seeking a prejudgment remedy ("PJR") of plaintiff's settlement proceeds. See id. About five days later, on September 12, 2018,

Attorney Ward attempted to use the debit card connected with his business account; the transaction was declined. See id. at 4. Attorney Ward then checked the balance of his business account and learned that it had been overdrawn by $1.1 million, and that approximately $200,000 of his business funds had been frozen. See id. It was shortly thereafter that Attorney Ward learned that the "State of Connecticut" had reversed the $1.3 million wire. Id. Counsel for plaintiff contend that the reversal of the wire "was a gross violation of the Settlement Agreement executed by all parties" in this matter. Id. at 5. Attorney Ward spoke to his bank on September 13, 2018, which informed him that it had refused to reverse the wire, and that it had credited his business account with the missing $200,000. See id. at 6. Attorney Ward contends that he bounced one check, resulting in a $38 fee. See id.

   Counsel for plaintiff state that on September 13, 2018, Attorney Ward received a letter from counsel in the state court PJR matter, which suggested knowledge of the circumstances surrounding the wire of the settlement funds. See Doc. #154 at 7. Counsel for plaintiff assert: "The timing of this letter combined with the reverse of the wire transfer creates an appearance of conduct that merits attention." Id. Throughout their motion, counsel for plaintiff refer to a "breach" of the settlement agreement. See generally Doc. #154. Plaintiff's

counsel request the Court to enter: (1) "an order compelling the State of Connecticut to cease interference with Attorney Ward's Account[;]" (2) "an order compelling the State of Connecticut to report back to it how this reversal of the wire transfer occurred, and under whose authority and for what reasons it happened[;]" (3) "an order compelling the State of Connecticut to repay Attorney Ward the $38 bounced check fee[;]" and (4) "an order compelling the State of Connecticut to pay for all the attorneys' fees expended by undersigned counsel in dealing with this mess, including the time to write and file this Motion for Sanctions[.]" Id. at 17. Counsel also ask that the Court order "such other relief as it deems just and appropriate." Id.

On September 25, 2018, the undersigned entered an Order to Show Cause regarding jurisdiction. [Doc. #156]. Although counsel for plaintiff assert that the Court may entertain a request to reopen and for sanctions under Federal Rule of Civil Procedure 60(b)(6) and Local Rule 11(a), see generally Doc. #154, the Order to Show Cause addressed the Court's concern that it had not retained jurisdiction to enforce the terms of the settlement agreement executed in this matter.[2] See id. at 4-7. Counsel for

---

[2] The Court misread counsel's motion as seeking sanctions under Federal Rule of Civil Procedure 11(a), likely because counsel cite to Local Rule 11(a), which no longer exists. See Doc. #154 at 1. Local Rule 11 was amended on November 7, 2016, and does not contain a subsection (a). The current version of Local Rule 11 states: "Except as otherwise required by statute, motions for

4

plaintiff filed a response to the Order to Show Cause on October 2, 2018. [Doc. #157].

Defendants object to counsel's motion on two grounds: First, that both parties have performed their requirements under the settlement agreement at issue; and second, that the Court no longer has jurisdiction over this matter. See generally Doc. #158.

Bearing each of the above filings in mind, the Court turns first to counsel's request to reopen this matter.

2. **Motion to Reopen**

Counsel request that the Court reopen the dismissal of this matter and sanction the State of Connecticut for its purported breach of the settlement agreement.[3] See generally Doc. #154. Specifically, counsel assert: "The district court may reopen a dismissed suit by reason of breach of the agreement pursuant to Fed. R. Civ. Pro. 60(b)(6)." Id. at 8 (sic).

> When a district court issues a final decision, it "disassociates itself from a case," Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 42 (1995), and its

---

attorneys' fees or sanctions must be filed with the Clerk not later than 30 days after the entry of judgment." D. Conn. L. Civ. R. 11. Local Rule 11 is purely procedural; it provides no substantive basis for an award of sanctions.

[3] The Court noted its concern in the Order to Show Cause that counsel sought relief against the State of Connecticut, which is not a named party to this action. Counsel addressed that concern in their response to the Order to Show Cause. See generally Doc. #157. The Court does not reach the merits of that issue in light of its recommendations, infra.

    jurisdiction over that case comes to an end, except for certain collateral matters especially reserved by precedent or by the Federal Rules, see, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) (Rule 11 sanctions); Fed. R. Civ. P. 54(d)(2)(B) (attorneys' fees); Fed. R. Civ. P. 60(b) (motions for relief from judgment). Indeed, the whole premise of Kokkonen is that a district court's power to issue new orders regarding a settlement agreement is terminated by the dismissal of the underlying case, unless special measures are taken.

Hendrickson v. United States, 791 F.3d 354, 362 (2d Cir. 2015) (discussing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994)). To retain jurisdiction over enforcement of a settlement agreement, a "district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order." Id. at 358. Those are the "special measures" which must be taken before a district court has the authority to issue new orders regarding a settlement agreement. Id. at 362. Judge Hall's order "granting" the stipulations of dismissal takes neither of those special measures. See Doc. #153.

    Counsel contend that the undersigned

    was intimately involved in crafting the terms of the resolution[.] ... Yet now, after the success of a negotiation, to be shackled to a 'so ordered' ruling, despite the Court's involvement in the Settlement Agreement seems to strip the Court of the powers to enforce that which it helped craft. The Court's dismissal is in effect an approval of the Settlement Agreement the parties reached with the aid and succor of the Court and its resources.

Doc. #157 at 11. It is not clear what counsel mean to suggest by stating that the undersigned acted as a mediator in this matter. The Court did assist the parties with the negotiation of the settlement now at issue; however, at no time was the undersigned involved in crafting the language used in the Settlement Agreement. The undersigned never reviewed a draft of any purported settlement agreement, nor did the undersigned review any language to be included in the final iteration of that agreement. Indeed, the undersigned did not facilitate the <u>final</u> settlement discussions which ultimately lead to the resolution of this matter; the parties reached a final settlement on their own. If counsel's argument is that the Court somehow implicitly retained jurisdiction in light of the undersigned's involvement in settlement negotiations, then that argument is unpersuasive.

Nevertheless, counsel argue that the circumstances described in the instant motion are the sort of extraordinary collateral circumstances contemplated by Rule 60(b)(6) and a certain line of cases. <u>See</u> Doc. #154 at 8-12. The Court disagrees. As noted in the Court's Order to Show Cause, essentially the motion seeks

> to circumvent the holding in <u>Kokkonen</u>, and relying on out-of-circuit cases that predated <u>Kokkonen</u>, ... asks the Court to vacate the order of dismissal under the catchall provision of Rule 60(b)(6)[.] Every court in this circuit to have addressed such an argument has refused to create an exception to <u>Kokkonen</u> that would effectively swallow the rule. Simply put, "[a]n alleged

7

> breach of a settlement agreement is insufficient to warrant relief under Rule 60(b)(6)," which provides for reopening cases only under "extraordinary circumstances." Diaz v. Loews N.Y. Hotel, No. 97CV2731(SAS), 1998 WL 326736, at *2 (S.D.N.Y. June 18, 1998) (citing Sawka v. Healtheast, Inc., 989 F.2d 138, 140-41 (3d Cir. 1993)); accord Collins v. Ford Motor Co., No. 3:97CV757(PCD), 2007 WL 911896, at *3 n. 5 (D. Conn. Mar.22, 2007); see also Manning v. Dubois, No. 95CV1806(JGK), 1996 WL 153950, at *2 (S.D.N.Y. Apr.2, 1996); Hetchkop v. Finest Carpet Workroom, Inc., No. 92CV4316(PKL), 1995 WL 746594, at *1 (S.D.N.Y. Dec.14, 1995); Rolex Watch, U.S.A., Inc. v. Bulova Watch Co., 820 F. Supp. 60, 62-63 (E.D.N.Y.1993).

Doc. #156 at 5-6 (quoting Supervalu Inc. v. Ectaco Inc., No. 10CV5267(RLM), 2011 WL 3625567, at *1 (E.D.N.Y. Aug. 12, 2011)). "[A]lthough a party's repudiation of a settlement agreement can give rise to extraordinary circumstances warranting relief under Rule 60(b)(6), such circumstances generally do not exist if the underlying settlement agreement is enforceable." Melchor v. Eisen & Son Inc., No. 15CV00113(DF), 2016 WL 3443649, at *7 (S.D.N.Y. June 10, 2016) (emphasis added). Here, there is no dispute that the settlement agreement at issue is enforceable.

Notably, counsel do not seek to reopen this case for purposes of litigating the merits. Rather, counsel seek to address an alleged breach of the Settlement Agreement related to the means by which payment was transmitted. Thus, it does not appear that counsel's motion is properly styled as one to "reopen" this matter. See Halstead-Johnson v. Conlon, No. 1:09CV87, 2010 WL 1740833, at *2 (D. Vt. Apr. 28, 2010)

(Defendant "is not attempting to re-open the merits of the case; instead, it seeks interpretation and enforcement of the settlement agreement. Therefore the Court does not consider the motion as one to re-open the case.").

Nevertheless, as occurred here, "[w]here an action is settled and there is no more than a so ordered stipulation of dismissal, the court lacks jurisdiction to consider disputes alleging breach of a separate settlement agreement. In such a case, disputes arising out of the alleged breach of the settlement agreement amount to breach of contract claims that are properly decided in a state forum." Thanning v. Nassau Cty. Med. Examiners Office, 187 F.R.D. 69, 71 (E.D.N.Y. 1999).

The Court finds that extraordinary circumstances do not exist to reopen this matter, and therefore recommends that counsel's "Motion to Reopen Case Pursuant to Fed. R. Civ. Pro. 60(b) and Motion for Sanctions" [**Doc. #154**] (sic) be **DENIED** for lack of jurisdiction.

### 3. Motion for Sanctions

Even assuming the Court has jurisdiction to consider the relief requested, the Court would nevertheless deny counsel's request to impose sanctions.

Counsel specifically request that the Court impose sanctions on the State of Connecticut pursuant to its inherent authority. See Doc. #154 at 12. Although counsel "recognize that

9

the Supreme Court has warned lower courts to exercise restraint and discretion in its use of its inherent power to sanction[,]" id., counsel fail to otherwise address the legal standard applicable to the imposition of sanctions pursuant to the Court's inherent power.

True, the "Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." Shangold v. Walt Disney Co., No. 03CV9522(WHP), 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)). "[A] federal court — any federal court — may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013) (quoting Chambers, 501 U.S. at 45-46). "A court may also sanction a litigant pursuant to its inherent authority 'if there is clear evidence that the litigant's conduct' was '(1) entirely without color and (2) motivated by improper purposes.'" Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 56 (2d Cir. 2018) (quoting Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009)). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at

44 (citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)).

The circumstances described in counsel's motion do not warrant the imposition of sanctions under the court's inherent authority. The circumstances surrounding the wire of the settlement funds suggest that someone employed by the State of Connecticut realized the error, and attempted to reverse the wire. That is particularly so in light of the Settlement Agreement's specific directive that the settlement funds were to be paid "in a check made payable to [plaintiff's] attorneys, Kenneth Krayeske and DeVaughn Ward." Doc. #154 at 22. As a whole, the conduct with which counsel take issue appears to be an error -- not an act of bad faith warranting the imposition of sanctions pursuant to this Court's inherent authority. See S.E.C. v. Smith, 798 F. Supp. 2d 412, 422 (N.D.N.Y. 2011) ("To impose sanctions under the Court's inherent authority, then, there must exist clear and convincing evidence that an individual's conduct was not merely negligent but was undertaken with subjective bad faith."), aff'd in part, dismissed in part, 710 F.3d 87 (2d Cir. 2013).

Counsel further submit:

> What is most amazing about this series of events is that Attorney Iannaccone knew of this claw back at all. Attorney Ward is confident his bank did not breach its fiduciary duty to him and alert Attorney Iannaccone to the reversed wire transfer. Thus the only logical

11

>conclusion is that someone in the State of Connecticut altered Attorney Iannaccone to the reversal, allowing him to send a letter that referred to the money being "back" in Attorney Ward's IOLTA.

Doc. #154 at 15 (sic); see also id. at 12 ("[A]n unknown person in the State of Connecticut tipped off a non-party to this case about private financial details about the transaction so that non-party could attempt to use it to gain leverage in a separate case."). To support that "logical conclusion," counsel rely on a letter dated September 13, 2018, from Attorney Paul M. Iannaccone, counsel in the state court PJR matter. That letter states: "I am aware that the funds were transferred back to your IOLTA account." Id. at 41. Counsel further represent: "When Attorney Ward called Attorney Iannaccone and asked about the letter, Attorney Iannaccone told Attorney Ward he was in Maine and had no knowledge." Id. at 8.

The letter on which counsel rely for the belief that an employee of the State has conspired with Attorney Iannaccone is not "clear evidence" that the State's conduct was either "entirely without color" or "motivated by improper purposes." Huebner, 897 F.3d at 56. Counsel's "logical conclusion," which at its core assumes a deliberate conspiracy between an employee of the State of Connecticut and Attorney Iannaccone, is not a basis to support the imposition of sanctions under this Court's inherent authority. Simply, counsel fail to establish any basis

12

for the imposition of sanctions, let alone the imposition of sanctions under the Court's inherent authority. Therefore, even if the Court had jurisdiction to consider plaintiff's request for sanctions, the Court would likewise recommend that that counsel's request for sanctions be **DENIED**.

### 4. Conclusion

Thus, for the reasons stated, the Court recommends that the "Motion to Reopen Case Pursuant to Fed. R. Civ. Pro. 60(b) and Motion for Sanctions" [**Doc. #154**] (sic) be **DENIED**.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order**. See Fed. R. Civ. P. 72(b)(2). Failure to object within fourteen (14) days will preclude appellate review. See 28 U.S.C. §636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2(a); Small v. Secretary of H.H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED at New Haven, Connecticut, this 12th day of October, 2018.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE